# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:10-CV-447-GCM-DCK

| | |
|---|---|
| KNEEVER MORROW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment and Motion To Expand The Record" (Document No. 12) and "Defendant's Motion For Summary Judgment" (Document No. 15). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment and Motion To Expand The Record" be denied; that "Defendant's Motion For Summary Judgment" be denied; and that the Commissioner's decision be vacated and this matter be remanded.

## I. BACKGROUND

Plaintiff Kneever Morrow ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On June 7, 2007, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.*, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq.*, alleging an inability to work due to a disabling condition beginning September 16, 2006. (Transcript

of the Record of Proceedings ("Tr.") 13). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on August 27, 2007, and again after reconsideration on November 21, 2007. (Tr. 51-55, 63-65). Plaintiff filed a timely written request for a hearing on December 3, 2007. (Tr. 82).

On May 7, 2009, Plaintiff appeared and testified at a hearing before Administrative Law Judge Richard L. Leopold ("ALJ"). (Tr. 13). On September 14, 2009, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 13-22). Plaintiff filed a request for review of the ALJ's decision on September 22, 2009, which was denied by the Appeals Council on July 7, 2010. (Tr. 1-3, 7). The September 14, 2009, ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1-3).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on September 10, 2010. (Document No. 1). "Plaintiff's Motion For Summary Judgment and Motion To Expand The Record" (Document No. 12) and " Memorandum In Support Of His Motion For Summary Judgment And Motion To Expand The Record" (Document No. 12-1), were filed March 24, 2011; and "Defendant's Motion For Summary Judgment" (Document No. 15) and "Memorandum In Support Of His Motion For Summary Judgment" (Document No. 15-1), were filed June 22, 2011. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham Mullen is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971); and (2) whether the

Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between September 16, 2006, and the date

3

of his decision.[1] (Tr. 13). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from September 16, 2006, through the date of his decision, September 14, 2009. (Tr. 13-22).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 21).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since September 16, 2006, his alleged disability onset date. (Tr. 14). At the second step, the ALJ found that Plaintiff's depression, pain, and peripheral neuropathy were severe impairments. (Tr. 14).[2] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 15).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform unskilled light work, involving occasional climbing, stooping, and crawling. (Tr. 16). In making his finding, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (Tr. 16). In addition, the ALJ determined Plaintiff's testimony "concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 17).

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work as a warehouse worker or order puller. (Tr. 20). At the fifth and final step, the ALJ concluded based on the testimony of a vocational expert ("VE") and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 20-21). Specifically, the VE testified that according to

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

the factors given by the ALJ, occupations claimant could perform included folder and marker. (Tr. 21). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between September 16, 2006, and the date of his decision, September 14, 2009. (Tr. 20-21).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ improperly required objective evidence of pain; (2) the ALJ erred in assessing the claimant's credibility; (3) the ALJ erred in his assessment of Plaintiff's residual functional capacity; (4) the ALJ failed to pose a proper hypothetical question to the vocational expert; and (5) the ALJ erred in his assessment of Plaintiff's psychiatric impairment. (Document No. 12-1). In addition, Plaintiff has also requested that the record be expanded to include "evidence which was before the Administrative Law Judge and the Appeals Council, but which was erroneously excluded from this Record by the Appeals Council." (Document No. 12-1, pp.18-20). The undersigned will discuss each of these contentions in turn.

### A. Objective Medical Evidence to Support Subjective Complaints of Pain

In his first assignment of error, Plaintiff presents a three-part argument relating to the issue of the ALJ's decision about Plaintiff's credibility. First, Plaintiff argues that the ALJ erred by "demonstrating that he did not follow . . . [the] legal standard which allows [Plaintiff] to rely on his subjective complaints to prove severity [of his pain]." (Document No. 12-1, p.9). Plaintiff contends that the ALJ "improperly required [Plaintiff] to provide 'objective' evidence of the severity of his pain." (Document No. 12-1, p.10).

Next, Plaintiff alleges that the ALJ's "stated rationale does not support his decision to discredit [Plaintiff's] reliability." (Document No. 12-1, p.13). In particular, Plaintiff points to two

different explanations used by the ALJ to justify his decision, which Plaintiff argues are both inadequate to support the ALJ's conclusion. First, Plaintiff notes that his "mental health specialist stated that his substance abuse was a distraction from emotional pain." (Document No. 12-1, p.11). Plaintiff argues that "the [ALJ] failed to consider the logical conclusion that the claimant's substance abuse is a symptom of his disabling physical and mental condition, rather than the cause of it." (Document No. 12-1, pp.11-12).

Plaintiff also contends that "the only other reason the [ALJ] offered to support his credibility decision was that [Plaintiff] told a Consultative Examiner that he played guitar, helped his mother around the house and walked and that he testified that he went to the mall with his children." (Document No. 12-1, p.12) (citing Tr. 17). Plaintiff argues that the ALJ took Plaintiff's daily activities out of context, and concludes by arguing that "a credibility decision is not based on substantial evidence when the [ALJ] selectively cites activities the claimant can perform and fails to read the record as a whole." (Document No. 12-1, p.12) (citing Hines v. Barnhart, 453 F.3d 559, 565 (4th Cir. 2006)).

Defendant argues that the ALJ "considered the objective evidence as part of the overall picture, which is precisely what the regulations and prevailing caselaw require." (Document No. 15-1, p.4). In support of this contention, Defendant cites to 20 C.F.R. §404.1529(c), which provides in pertinent part:

> When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work. In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating

7

> or nontreating source, or other persons about how your symptoms affect you.

20 C.F.R. §404.1529(c) (2011).

Next, Defendant argues that the ALJ "articulated a litany of permissible reasons in viewing Plaintiff's subjective allegations as not entirely credible." (Document No. 15-1, p.5). In particular, Defendant notes that the ALJ cited to Plaintiff's daily living activities, medication, treatments, and the objective medical evidence in the record. (Document No. 15-1, pp.5-6). Defendant contends that the ALJ "properly evaluated the objective evidence as one factor among many." (Document No. 15-1, p.7).

In addition to Plaintiff's daily activities mentioned above, the ALJ also noted that the objective medical evidence and Plaintiff's medications/treatments also did not support the level of pain alleged by Plaintiff. (Tr. 16-19). For example, the ALJ observed that "[t]he claimant was prescribed numerous medications . . . which appeared to adequately manage the claimant's pain. The claimant also participated in physical therapy with evidence of functional improvement." (Tr. 17-18).

Further, the ALJ highlighted that Plaintiff's ongoing treatment record also failed to corroborate Plaintiff's subjective testimony of disabling pain. For example, the ALJ made the following findings in regards to Plaintiff's treatment with Dr. Amiri:

> On October 19, 2006, Dr. Amiri . . . noted that MRI's of the claimant's brain, C-spine, T-spine and LS spine showed no focal abnormality. In addition, a spinal tap performed on the claimant showed normal cells, normal protein, normal glucose, negative Lyme, negative crypto antigen and malignant cell. EMG nerve conduction did not show any evidence of peripheral neuropathy. When Dr. Amiri examined the claimant on November 29, 2006, it was noted

> that claimant's joint pain improved subsequent to taking Prednisone. Subsequently, on May 8, 2007, Dr. Amiri reported that the claimant's gait improved and he was not as stiff . . . On June 14, 2007, Dr. Amiri reported that the claimant's paresthesia improved. Neurological examination revealed the claimant continued to experience hyperreflexia but was able to get up very fast from a chair and walk around . . . On May 21, 2008 . . . Dr. Amiri concluded that there was no etiology, which explained the claimant's symptoms.

(Tr. 18). In addition, the ALJ observed that Plaintiff told "treating physician, Dr. Boortz-Marx on December 8, 2008, that he exercised on a regular basis," and concluded that "these statements have a negative affect on the claimant's overall credibility." (Tr. 17).

The ALJ also noted that "there is . . . evidence that the claimant has been non-compliant with treatment. Progress notes received from Presbyterian Psychiatric Associates dated April 17, 2008 revealed the claimant reported that he shared two bottles of liquor with his brother, blacked out and drove his mother's car while intoxicated. He later admitted on May 27, 2008 that he consumed alcohol and marijuana while at a birthday party." (Tr. 19).

When addressing Plaintiff's mental condition, the ALJ noted that "[a]lthough, the claimant has received ongoing psychiatric treatment, the record demonstrates that absent the claimant's alcohol and drug use, he is capable of understanding, remembering, and following simple directions." (Tr. 19). The undersigned also notes that Leslie Jani, a counselor with Presbyterian Psychiatric Associates, observed that on May 14, 2009, Plaintiff

> notes feeling [increased] paranoid during hearing [for disability] and preoccupied [over] the outcome. Client denies drug and alcohol use since last session [and] has been doing some side work [with] male friend painting homes [and] splitting the profit . . . **Client frustrated [with] self [about] possibility his alcohol use led to physical condition**."

9

(Tr. 608) (emphasis added). Therefore, contrary to Plaintiff's assertion that the ALJ failed to consider that Plaintiff's substance abuse might be caused by his mental and physical problems, the evidence within the record demonstrates that Plaintiff himself was concerned that his substance abuse might be a contributing cause of his physical pain.

Based on the foregoing, the undersigned finds that the ALJ took into account Plaintiff's ongoing treatment records, daily activities, medical/treatment history, and Plaintiff's own statements, much of which did not support Plaintiff's subjective testimony that his pain was so severe as to render him totally disabled from all work. The undersigned is persuaded that substantial evidence within the record to support the ALJ's conclusion that "absent alcohol and drug use, the claimant is not precluded from performing unskilled work." (Tr. 19).

**B. Residual Functional Capacity**

Next, Plaintiff contends that the ALJ "erred in finding that [Plaintiff] can perform light work." (Document No. 12-1, p.13). Plaintiff notes that he "testified that he [Plaintiff] cannot walk, stand or sit on a sustained basis because of his pain." (Document No 12-1, p.13). Plaintiff argues that the ALJ's "finding that [Plaintiff] can perform light work is a finding that [Plaintiff] can sustain standing and walking six to eight hours a day. This finding is contrary to the medical evidence and contrary to the testimony." (Document No. 12-1, p.13).

Defendant argues that the ALJ relied upon substantial evidence within the record when making his decision regarding Plaintiff's RFC. For instance, Defendant notes that "[t]he ALJ's physical RFC assessment is supported by the assessments of Dr. Warren and Dr. Drummond . . . The mental RFC assessment is supported by the opinions of Dr. Tovah Wax and Dr. W.H. Perkins." (Document No. 15-1, p.11). Defendant concludes by noting that this particular contention is without

merit since Plaintiff failed to cite to any evidence within the transcript or any other authority that might support the claim. (Document No. 15-1, p.11).

The ALJ made the following comments regarding his decision that Plaintiff was capable of performing light work:

> Dr. Amiri has indicated on several occasions that the etiology of the claimant's symptoms was unknown . . . In addition, Dr. Amiri did not provide an evaluation of the claimant's functional capacities. Therefore, in the absence of a functional capacities evaluation completed by a treating physician, I have given substantial weight to the findings of the State Agency medical consultants . . . who concluded that the claimant would be able to perform medium work . . . In sum, I have found that the evidence presented at the hearing . . . demonstrates that even absent alcohol and drug use, the claimant has greater limitations than those originally offered by the state agency physicians. Specifically, I find that based on the combination of the claimant's physical and mental impairments, absent alcohol and drug use, the claimant is limited to a range of light work.

(Tr. 20). It appears that the ALJ based his RFC finding upon substantial evidence within the record, including the treatment notes of Plaintiff's treating physicians and the functional capacities evaluation completed by the state agency physicians. However, noting the undersigned's recommendation below that this matter be remanded, it would make sense for a reviewing ALJ to give Plaintiff's RFC renewed and full consideration.

### C. Hypothetical Question Posed to the Vocational Expert

Next, Plaintiff alleges that the ALJ failed to pose a "proper hypothetical question which fairly set out all of claimant's impairments." (Document No. 12-1, p.13) (citing Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). In particular, Plaintiff asserts that the ALJ's hypothetical was improper in three ways: (1) it failed to reflect Plaintiff's RFC finding of moderate limitations; (2)

it failed to include any limitations on Plaintiff's use of his upper extremities; and (3) it failed to take into account unscheduled breaks. (Document No. 12-1, pp.14-15).

Plaintiff notes that the ALJ "found that [Plaintiff] had *moderate* limitations in the following areas: activities of daily living, social functioning and concentration, persistence, and pace" during step three of the required analysis. (Document No. 12-1, p.14) (citing Tr. 15-16). Plaintiff then argues that "in posing his hypothetical to the vocational expert, the [ALJ] included only a *mild* limitation on attention, concentration, understanding and memory. Thus the hypothetical question did not fairly set out all of claimant's impairments." (Document No. 12-1, p.14) (citing Tr. 42).

Defendant argues that the ALJ posed a proper hypothetical to the VE and was allowed to "rely upon the testimony of a VE that an individual with a given vocational profile – as articulated in a hypothetical question – can perform the work associated with the jobs." (Document No. 15-1, p.14). Defendant notes that Plaintiff's first contention arises within the context of the third step of analysis, in which the ALJ must determine if Plaintiff has "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Document No. 15-1, p.13) (citing 20 C.F.R. §404.1520a(a)). In particular, Defendant argues that "Plaintiff's focus on the differences between "mild" and "moderate" limitations is inapt; indeed the ALJ should not have used this formulation at the hearing." (Document No. 15-1, p.13).

The undersigned finds that Plaintiff's contention regarding the ALJ's use of the term "mild," as opposed to "moderate," in referring to Plaintiff's limitations in his hypothetical to the VE, raises valid concerns. (Tr. 16, 42); (Document No. 12-1, pp.13-15); (Document No. 16, pp.1-5). The ALJ made the following finding in his decision about Plaintiff's RFC: "After careful consideration of

the entire record, the undersigned finds that the claimant has the residual functional capacity to perform unskilled light work involving occasional climbing, stooping, and crawling." (Tr. 16). At the hearing, the ALJ addressed the VE by specifically asking,

> Please assume I find a person who is 45 years old, has a high school education. Further assume I find he could perform light work. He's limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. There's a **mild** limitation on attention, concentration, understanding and memory.

(Tr. 42) (emphasis added). In response to this hypothetical, the VE testified, "I could give you some examples of just some light, unskilled occupations. There's a, a light occupation of a folder . . . There'd be a light, unskilled of a marker II." (Tr. 42).

The undersigned notes that the ALJ's decision describes Plaintiff as being moderately restricted in activities of daily living, and that he has moderate difficulties with social functioning and with regard to concentration, and persistence or pace. (Tr. 15-16). As Defendant seems to argue, the ALJ does distinguish his analysis at steps 2 and 3 and states that his "residual functional capacity assessment reflects the degree of limitation the undersigned has found in the . . . mental functional analysis." (Tr. 16). However, neither the ALJ nor Defendant have offered a sufficient explanation for why the hypothetical to the VE referred to Plaintiff's limitations as mild, instead of moderate. (Tr. 42). Moreover, the hypothetical to the VE is also inconsistent with the ALJ's observation that the state agency medical consultants concluded that Plaintiff "has moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace." (Tr. 20). Especially where the ALJ found that "the claimant has **greater** limitations than those originally offered by the state agency physicians," it is difficult to determine whether or not the ALJ properly incorporated

13

Plaintiff's mental limitations into the hypothetical, or his ultimate conclusions. Id. (emphasis added).

Relevant to this analysis, Plaintiff has pointed the Court to a recent finding by the District Court for the Eastern District of North Carolina which includes the following pertinent discussion:

> the ALJ merely noted that Plaintiff was mentally limited to "unskilled, simple, and repetitive work and had only frequent, not constant, contact with the general public." The ALJ's hypothetical omitted the ALJ's findings that Plaintiff had "moderate difficulties in social functioning" and "moderate difficulties in maintaining concentration, persistence, or pace." (Tr. 14). Numerous courts have admonished ALJ's for presenting simplified mental RFC findings to the VE that did not encompass all of the findings made in the decision. See *e.g.* Conley v. Astrue, 692 F.Supp.2d 1004, 1008 (C.D.Ill. 2010) ("In general, an ALJ cannot 'translate' a mental limitation into words describing work such as unskilled, simple, repetitive, routine, one- or two-step, or any similar characterization, because these descriptions may not account for all the limitations a doctor meant to convey" citing Stewart v. Astrue, 561 F.3d 679, 684–685 (7th Cir. 2009) and Craft v. Astrue, 539 F.3d 668, 677–678 (7th Cir. 2008)); Edwards v. Barnhart, 383 F.Supp.2d 920, 930–931 (E.D.Mich. 2005) (finding that "jobs entailing no more than simple, routine, unskilled work" do not convey moderate limitations in ability to concentrate, persist, and keep pace); Whack v. Astrue, 2008 WL 509210, at *8 (E.D.Pa. 2008) (citing cases for the proposition that restrictions of "simple" or "low-stress" work do not sufficiently incorporate the claimant's medically established limitations where claimant has moderate deficiencies in concentration, persistence or pace).
> 
> Therefore, the ALJ's RFC finding lacks support in the record and the ALJ erred by presenting a flawed hypothetical to the Vocational Expert.

Tune v. Astrue, 760 F.Supp.2d 555 (E.D.N.C. 2011).

Based upon the foregoing, the undersigned finds that the ALJ here, as in Tune, may have presented a flawed hypothetical. The undersigned will therefore recommend that this matter be

14

remanded for further review by an ALJ. Under the circumstances, the undersigned will decline to express an opinion as to the Plaintiff's additional allegations regarding error in the hypothetical or the assessment of psychiatric impairments, but will respectfully suggest that all these issues be carefully considered upon remand.

### D. Plaintiff's Request to Expand the Record

Finally, Plaintiff challenges that the Appeals Council was incorrect in "removing Exhibits 3, 4, and 22, which were considered by both the [ALJ] and the Appeals Council, saying, 'Removed as an exhibit by the Appeals Council because it does not refer to the claimant.'" (Document No. 12-1, p.18). Plaintiff requests that these exhibits be returned to the record because the errors are merely typographical and do not prevent "the conclusion that these records are relevant to [Plaintiff's] claim." (Document No. 12-1, p.19).

Defendant notes that "the Commissioner has determined that a public filing of the documents with the incorrect information would potentially result in a technically improper disclosure of personally identifiable information in violation of 5 U.S.C. §552a, which imposes both civil and criminal liability for qualifying infractions." (Document No. 15-1, p.24). Further, Defendant notes that "Plaintiff has not shown any harm flowing from the Commissioner's decision not to include these records in the administrative transcript . . . [t]hus, Plaintiff has not shown how the records in question lead to a different result." (Document No. 15-1, pp.24-25).

The undersigned finds that this request is not relevant to the decision before this Court. Plaintiff himself has noted that he is not "arguing for a remand based on this particular error," the undersigned sees no useful purpose in the request as it pertains to the duties of this Court, and will decline to recommend that the Record be expanded. (Document No. 16, p.5).

15

## IV. CONCLUSION

The undersigned is unconvinced that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence does not support the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Specifically, although the ALJ's ultimate conclusion that this Plaintiff was "not disabled" may be accurate, the undersigned finds that the decision and the hypothetical to the VE raise doubts as to the evidence the ALJ relied on to reach his conclusion. As such, the undersigned will recommend that the this matter be remanded for further review.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment and Motion To Expand The Record" (Document No. 12) be **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 15) be **DENIED**; and the Commissioner's determination be **VACATED** and this matter **REMANDED** for reconsideration of the record and a new hearing.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections

will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Graham Mullen.

**IT IS SO RECOMMENDED**.

Signed: August 15, 2011

David C. Keesler
United States Magistrate Judge